**Lorette PELLETIER, Plaintiff**

v.

**RELIANCE STANDARD LIFE INSURANCE COMPANY, Defendant**

No. CIV.02–10–P–C.

United States District Court, D. Maine.

Sept. 27, 2002.

Stephen P. Beale, Skelton, Taintor & Abbott, Auburn, ME, for Lorette Pelletier, plaintiff.

Glenn H. Robinson, Thompson & Bowie, Portland, ME, for Reliance Standard Life Insurance Company, defendant.

## MEMORANDUM OF DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GENE CARTER, District Judge.

This case arises out of Plaintiff Lorette Pelletier's claim for long-term disability benefits under the insurance policy issued to her employer by Defendant Reliance Standard Life Insurance Company ("Reliance"). Plaintiff has filed suit under 29 U.S.C. § 1132(a)(1)(B), the civil enforcement section of the Employee Retirement Income Security Act of 1974 ("ERISA"), alleging wrongful termination and denial of benefits payable under Defendant's insurance policy. The Court now has before it Plaintiff's and Defendant's cross Motions for Summary Judgment and their supporting Statements of Material Facts, as well as the respective objections and replies thereto. After consideration of the evidentiary record and the arguments made by the parties, the Court will grant Defendant's Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment.

## I. FACTS

Reliance issued a group long-term disability policy to Falcon Shoe Manufacturing Company ("Falcon Shoe"). By virtue of her employment with Falcon Shoe, Plaintiff was insured under this policy. Since October of 1992, Plaintiff was employed as supervisor of the stitching department at Falcon Shoe, a position she held until she terminated her employment there on October 1, 1999. (R. 133.) On the same day she terminated her employment, Plaintiff applied for disability income benefits from Defendant Reliance, claiming she was unable to continue working due to fibromyalgia and osteoarthritis. (R. 133–38).

In October of 1998, Plaintiff was referred by her treating cardiologist and family physician, Dr. Robert Weiss. He referred her to Dr. Lee Kendall, a rheumatologist. At that time, Plaintiff was complaining of multiple areas of joint pain, including her shoulder, arm, hip, and lower back. (R. 182.) At this first visit, Dr. Kendall diagnosed her as having osteoarthritis, primarily affecting the hips and probably her lower back, and bursitis of the right shoulder. (R. 184.) When Plaintiff returned one month later, Dr. Kendall diagnosed her with mild osteoarthritis affecting the hips and probably the hands, and fibromyalgia. (R. 180). He pronounced her prognosis as "only fair at best." (R. 181.) In March of 1998, Plaintiff discussed being declared disabled with Dr. Kendall, but at that time, he indicated that he believed "if [he and Plaintiff] could find the right combination [of medicine and exercise] ... she may not need [to be declared disabled]." (R. 179.)

However, in late September of 1999, when Plaintiff saw Dr. Weiss, her treating cardiologist and family physician, he indicated that "[s]he is totally exhausted and frazzled," and that he "really [thought] she should stop working. She cannot take the stress." (R. 169.) When she then visited Dr. Kendall on October 1, 1999, he noted that Dr. Weiss had felt she was under "a tremendous amount of stress" and that he

had given her a slip to stay out of work, "related to anxiety." (R. 177.) He lastly indicated that her fibromyalgia "certainly may be exacerbated by her stress and distress." *Id.* It was at this time that Plaintiff ceased working and requested disability benefits.

In support of Plaintiff's application for disability benefits, Reliance received a Physician's Statement dated October 6, 1999, from Dr. Weiss. The form indicated that Plaintiff's symptoms were "exacerbation of fibromyalgia, osteoarthritis, weight loss, and CAD [coronary artery disease]," and that he had referred Plaintiff to Dr. Lee Kendall, a rheumatologist, for her osteoarthritis and fibromyalgia. (R. 198.) The form further indicated that Plaintiff was capable of one to three hours of standing, sitting, walking, and driving in an eight-hour workday, and that she was able to use her upper extremities for repetitive simple grasping, pushing and pulling, and fine manipulation. (R. 199.) Finally, Dr. Weiss indicated that in an eight-hour day, Plaintiff was capable of light work, meaning she was able to lift or carry twenty pounds maximum and frequently lift or carry up to ten pounds. *Id.* The form submitted to Reliance did not say anything about any stress or anxiety and its effect on her ability to work.

To further evaluate Plaintiff's claim, Reliance requested medical records for the period of July 1, 1999, to the date of its request letter, October 29, 1999, from Dr. Weiss. (R. 115.) Subsequently, Reliance sent a request for medical records to Dr. Kendall. (R. 112, 106, 108.) The most recent information provided by Dr. Kendall related to an office visit by Plaintiff in January of 2000. The doctor's note from that visit indicated that Plaintiff had fibromyalgia/myofascial pain of the neck and shoulders and early osteoarthritis. (R. 175.) It also noted that he would see her again for a follow-up in about a year, and

that she'd be following up with Dr. Weiss for her general medical care. *Id.*

On March 3, 2000, Defendant advised Plaintiff that she had been awarded long-term disability benefits, effective January 1, 2000. (R. 96.) The letter advised Plaintiff that "periodic objective documentation" of her disability status would be required in order to continue her benefits and that "[o]bjective documentation of your continuous disability must be provided by the physician who is treating you and satisfactory to us." *Id.* On March 28, 2000, less than one month after notifying Plaintiff that they had approved her long-term disability benefits, Reliance wrote a letter notifying Dr. Weiss that it was undertaking a review of Plaintiff's disability status. (R. 95.) It requested all copies of medical records from January 20, 1999, to the then present and requested that he fill out a medical questionnaire (Physical Capacities Assessment form) based on his most recent evaluation of the patient's condition. *Id.*

On the form submitted to Reliance pursuant to its request, dated April 4, 2000, Dr. Weiss again indicated that Plaintiff was capable of significant standing or walking, and/or working at a light level of exertion, involving lifting a maximum of twenty pounds. (R. 164.) He likewise maintained that she was able to use her upper extremities for repetitive activities such as simple grasping, pushing and pulling, and fine manipulation. *Id.* When asked if there were any other factors affecting the patient's physical abilities, Dr. Weiss marked "N/A." (R. 165.) Based on this assessment of Dr. Weiss and the Dictionary of Occupational Titles listing Plaintiff's occupation as light-duty work, requiring the lifting of twenty pounds occasionally and up to ten pounds frequently, Reliance determined that Plaintiff was no longer totally disabled. (R. 93–94.)

As of May 1, 2000, Plaintiff's benefits were terminated. *Id.* On May 1, 2000, Dr. Weiss sent a letter "To Whom it May Concern" to supplement the earlier form he had filled out on April 4. In this letter, Dr. Weiss explained that when he said that Plaintiff could lift twenty pounds, "this was meant to state that she could lift 20 pounds at home, but did not mean to imply that she could do this at work. I think that the patient's fibromyalgia and her anxiety and stress related problems do prohibit her from work ... and have lead to her total disability" (R. 160.) On May 4, 2000, Plaintiff filed an ERISA appeal of this termination of benefits. (R. 89–90.)

In June of 2000, Reliance sent Plaintiff a letter notifying her that its decision to terminate her long term disability benefits was affirmed. (R. 20–23.) In the letter, Defendant explained that it had considered Dr. Weiss's May 1, 2000, letter and all other medical information in the file, as well as information provided by Plaintiff's employer describing the duties of her occupation. (R. 21.) Given this information, Defendant concluded that "based on Dr. Weiss' assessment of [Plaintiff's] functional ability to perform in the work place [Plaintiff] retain[s] the capacity to perform the material duties of [her] own occupation on a full time basis." (R. 22.) Defendant added that central to their decision was whether her condition would preclude her from performing her "own occupation in a typical work setting for any employer in the general economy." *Id.* Defendant concluded that "there is no clinical evidence to indicate that you are precluded from performing your occupation for another employer in an alternative work setting." *Id.* Moreover, the letter indicated that with regard to Dr. Weiss's clarification on the issue of whether she could lift twenty pounds, "we have no basis by which we can differentiate the lifting of 20 lb [sic] whether at work or at home." *Id.* As such, Defendant stated it had "no basis" to reverse its decision to deny Plaintiff's claim. *Id.*

Following this denial of Plaintiff's appeal, Dr. Weiss filled out a Physician's Statement identical to the one he filled out when Plaintiff first filed her claim in October of 1999. (R. 58–59.) This time, Dr. Weiss indicated that Plaintiff could do no more than one-half hour of simple grasping with her upper extremities, and could do no pushing, pulling or fine manipulation. He also noted this time that in an eight-hour day, Plaintiff was capable of only sedentary work and no longer could lift as much as twenty pounds. (R. 59.) He added to the form that Plaintiff was "permanently disabled." *Id.*

In October of 2000, Reliance also received a copy of a September 20, 1999, letter from Dr. Weiss that they had not previously received. The letter was addressed "To Whom it May Concern," and noted that he had suggested to Plaintiff that "she should strongly consider termination her [sic] employment." (R. 56.) He stated that the amount of stress that Plaintiff was under was exacerbating her fibromyalgia and her osteoarthritis, and that this combination of her medical problems and anxiety "[made] it impossible for her to work at this time." *Id.* Nevertheless, on January 15, 2001, a vocational rehabilitation coordinator at Reliance indicated that Plaintiff could perform the duties of her own occupation. (R. 24.) On January 16, 2001, Reliance notified Plaintiff's counsel that despite the fact that ERISA did not mandate any further review, it had again considered Plaintiff's request. Nevertheless, it now was informing Plaintiff that its ERISA decision was final, and her benefits would not be reinstated. (R. 18–19.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate only when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). An issue is "genuine" if, based on the record evidence, a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). " 'Material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant." *McCarthy v. Northwest Airlines, Inc.,* 56 F.3d 313, 315 (1st Cir.1995) (citations omitted). The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Cadle Co. v. Hayes,* 116 F.3d 957, 959 (1st Cir.1997). Once the moving party has made a preliminary showing that no genuine issue of material fact exists, "the nonmovant must contradict the showing by pointing to specific facts demonstrating that there is, indeed, a trialworthy issue." *National Amusements, Inc. v. Town of Dedham,* 43 F.3d 731, 735 (1st Cir.1995). Cross motions for summary judgment do not alter the basic standard but rather, simply require the court to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed. *Adria Intern. Group, Inc. v. Ferre Development, Inc.,* 241 F.3d 103, 107 (1st Cir.2001) (citing *Wightman v. Springfield Terminal Ry. Co.,* 100 F.3d 228, 230 (1st Cir.1996)). If there are any genuine issues of material fact, both motions must be denied as to the affected issue or issues of law; if not, one party is entitled to judgment as a matter of law. 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice And Procedure § 2720 at 327–28 (3d ed.1998).

■ In reviewing the decision of a plan administrator who has discretionary authority to grant or deny benefits under ERISA, the Court must apply the arbitrary and capricious standard of review. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 111, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). In this case, Reliance has an explicit grant of discretionary authority to interpret the plan and determine eligibility for benefits. (R. 207.)[1] Therefore, the Court will apply this standard in reviewing Defendant's decision to deny Plaintiff benefits.[2] *See Terry v. Bayer Corp.,* 145 F.3d 28, 37 (1st Cir.1998) ("Where the clear discretionary grant is found, 'Firestone and its progeny mandate a deferential arbitrary and capricious standard of judicial review.' ") (Citing *Recupero v. New England Tel. and Tel. Co.,* 118 F.3d 820, 827 (1st Cir.1997)). Applying this standard, the administrator's decision will be upheld if it is reasoned and "supported by substantial evidence in the record." *Vlass v. Raytheon Employees Disability Trust,* 244 F.3d 27, 30 (1st Cir. 2001) (citations omitted). "Evidence is

---

**1.** All references are to the Stipulated Record. *See* Pleading No. 7.

**2.** The plan reads: "Reliance Standard Life Insurance Company shall serve as the claims review fiduciary with respect to the insurance policy and the Plan. The claims review fiduciary has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility or benefits. Decisions by the claims review fiduciary shall be complete, final and binding on all parties." (R. 207.)

'substantial' if it is reasonably sufficient to support a conclusion." *Id.*

## III. DISCUSSION

 Plaintiff argues that based on these facts, the decision of Reliance to revoke her long-term disability benefits was arbitrary and capricious, and "irrational and unsupportable." *See* Memorandum of Law Supporting Plaintiff's Motion for Summary Judgment (Pleading No. 8) at 6. In evaluating this decision under the arbitrary and capricious standard, one must bear in mind that "the hallmark of such review [is] that 'a court is not to substitute its judgment for that of the [decision-maker].'" *Terry*, 145 F.3d at 40 (*quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)). "Rather, in the ERISA context, it has been stated that under the arbitrary and capricious standard, 'a fiduciary's interpretation of a plan will not be disturbed if reasonable.'" *Id.* (*quoting Dewitt v. Penn–Del Directory Corp.*, 106 F.3d 514, 520 (3d Cir.1997)).

According to Defendant's policy, it was to serve as the "claims review fiduciary," and, as such, it retained "the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility or benefits." (R. 207.) Under the Reliance policy, an individual is entitled to monthly disability benefits if he or she:

(1) is Totally Disabled as the result of a Sickness or Injury covered by this Policy;

(2) is under the regular care of a Physician;

(3) has completed the Elimination Period;[3] and

(4) submits satisfactory proof of Total Disability[4] to [Reliance Standard].

(R. 211.)

Defendant Reliance concluded that Plaintiff's medical disability did not qualify as a "Total Disability" as defined by the Policy, and that therefore she was not entitled to benefits. In making its decision to deny benefits, Defendant considered the medical forms submitted by Plaintiff's cardiologist and treating physician, Dr. Weiss. Both on the form he submitted in support of Plaintiff's initial request for benefits in October of 1999 and on the Physical Capacities Assessment form he submitted in April of 2000 in response to Defendant's request after it had begun reconsidering its decision to grant benefits, Dr. Weiss indicated that Plaintiff was capable of light work, including the lifting of up to twenty pounds. (R. 199, R. 164.) Defendant compared this information with the definition given in the Dictionary of Occupational Titles for Plaintiff's position of stitching department supervisor. According to this definition, Plaintiff's occupation entailed light-duty work, involving the lifting of

---

**3.** The Elimination Period under the policy is ninety days. This means an insured must be totally disabled for ninety consecutive days. (R. 203.)

**4.** The policy defines "Total Disability" to mean that as a result of injury or sickness:

 (1) during the Elimination Period and for the first 60 months for which a Monthly Benefit is payable, an Insured cannot perform the material duties of his/her regular occupation;

 (a) "Partially Disabled" and "Partial Disability" mean that as a result of an Injury

or Sickness an Insured is capable of performing the material duties of his/her regular occupation on a part-time basis or some of the material duties on a full-time basis. An Insured who is Partially Disabled will be considered Totally Disabled, except during the Elimination Period;

 (b) "Residual Disability" means being Partially Disabled during the Elimination Period. Residual Disability will be considered Total Disability.

(R. 205.)

twenty pounds occasionally and up to ten pounds frequently. (R. 94.) Based on this information, Defendant determined that Plaintiff did not meet her group policy's definition of Total Disability, and it terminated her benefits. Given these facts, Defendant's decision cannot be seen as arbitrary and capricious.

■ Defendant's decision to deny Plaintiff's appeal of its decision is equally reasonable and supported by substantial evidence. Plaintiff argues that when Dr. Weiss filled out the Physical Capacities Assessment Form and indicated that Plaintiff was capable of light work involving the lifting of twenty pounds, he meant this in the cardiovascular sense only, and "he did not mean that she could do so repetitively in a work environment." *See* Plaintiff's Objection to Defendant's Motion for Summary Judgment, with Incorporated Memorandum of Law (Pleading No. 12) at 6. That is, as he indicated in his clarification letter sent immediately after Plaintiff's benefits were terminated, he meant that Plaintiff could lift twenty pounds at home, but not at work. (R. 160.) Defendant was not unreasonable in dismissing this argument. Defendant explained that it had no basis to distinguish between the lifting of twenty pounds at work or at home. (R. 22.) Twenty pounds is twenty pounds, regardless of the location where that act occurs, and Defendant cannot be faulted for rejecting Dr. Weiss's attempt to make such a distinction.[5]

Defendant also considered the lack of support for Plaintiff's disability claim from her rheumatologist in its decision to uphold the termination of Plaintiff's benefits. As Defendant noted, Plaintiff was referred to Dr. Kendall because of her fibromyalgia and osteoarthritis symptoms (R. 182.) Yet it is her cardiologist and family physician who submitted her claim for benefits and submitted further information in support of her appeal. Based on the record, Dr. Kendall has not indicated that he finds Plaintiff to be totally disabled. On the contrary, when Plaintiff asked for consideration for disability, he indicated that if they could find the right combination of medicine for her, she might not need to be declared disabled. (R. 179.) Moreover, when Defendant sent Dr. Kendall a letter advising him that his patient had applied for disability benefits and asking him to fill out a form so that they could better assess this claim, he failed to return this form. (R. 176.) This is so, even though Defendant indicated on the fax cover sheet that "[e]valuation of Ms. Pelletier's claim depending on your response." (R. 108.) Of the records eventually submitted to Defendant, the most recent was Dr. Kendall's report from a January 2000 office visit by the plaintiff, wherein he indicated that Plaintiff stated she was doing better not working, and that she would continuing working on range of motion exercises and a moderate exercise program. He then indicated that he would not see her for a follow-up until the following year. (R.

---

5. This is especially so given that Plaintiff is applying for disability benefits because she claims she is no longer capable of performing what is required of her at *work*. The sole purpose of the form is to assess an individual's capabilities at work, and the form specifically asks the doctor to evaluate "the patient's ability to perform ... activities on a regular basis in an 8 hour work day." (R. 164.) The question specifically at issue asks the doctor to indicate at what exertional level the patient

can *work*. *Id.* Plaintiff seizes upon the word "exertional" and asserts that this is why Dr. Weiss responded "in terms of cardiovascular effort only," and that his response should not be taken to mean that Plaintiff was not still disabled. *See* Memorandum of Law Supporting Plaintiff's Motion for Summary Judgment (Pleading No. 8) at 7. This argument makes no sense, and Defendant acted reasonably in finding it unhelpful to Plaintiff's disability claim.

175.) That was the last Defendant heard from Dr. Kendall regarding Plaintiff's condition.

Plaintiff's rheumatologist knew she was applying for disability benefits based on her fibromyalgia and osteoarthritis. The fact that he did not at any time indicate to Reliance that he thought his patient should be granted disability benefits, even when her initial claim was denied and Plaintiff sought to supplement her claim with additional information, provides a reasonable basis on which Defendant could have concluded that Plaintiff was not totally disabled.[6]

Defendant was also reasonable in finding that Plaintiff's claims relating to stress and anxiety were not sufficient to support her disability claim. Plaintiff appears to be attempting to buttress her claim by asserting that the stress and anxiety of her job is aggravating her fibromyalgia and osteoarthrits. While this may be true, Plaintiff has offered no concrete proof of this. Despite Dr. Weiss's indication that she seemed "totally exhausted and frazzled" (R. 169), he did not include this information on any of the forms given to him by Reliance to support or document Plaintiff's application for long-term disability benefits. Likewise, despite the fact that Dr. Kendall made notations in his notes about stress that Plaintiff appeared to be under, and his notation at one point that her fibromyalgia "may be exacerbated by her stress and distress" (R. 177), he at no point suggested that she was not able to work.[7] Plaintiff has asked for these benefits based on her fibromyalgia and osteoarthritis. (R. 198.) She has not asked for them based on mental health problems. "ERISA and its implementing

regulations, however, [do] not require [the plan administrator] to assess an alternative diagnosis to the one [the claimant] submitted for disability benefits ... much less to determine whether that alternative diagnosis constitutes a total disability." *Donato v. Metropolitan Life Insurance Co.,* 19 F.3d 375, 382–83 (7th Cir.1994). Moreover, any claim for benefits based on a psychiatric disability "require[s] objective psychiatric evidence linking her symptoms to a psychiatric disorder that is totally disabling." *Id.* at 383, n. 6. This has not been done. To the extent Plaintiff is asserting that her claim is a disability based on her mental health condition, the Court notes that there is no evidence in the record that Plaintiff ever sought treatment from a mental health professional.

Upon reviewing Plaintiff's file on appeal, Defendant did take into consideration her claims that her ability to work was influenced by the stress she was under. In its letter, Plaintiff remarked that it "recognize[d] the fact that [Plaintiff had] complaints of stressful work conditions in [her] position at Falcon Shoe ..." (R. 22.) However, Defendant pointed out that its policy requires that to be considered totally disabled, an individual must be incapable of performing their "own or regular occupation as it is performed in a typical work setting for any employer in the general economy." (R. 93.) It is not one's job with a specific employer, in a particular work environment or in a particular occupational field, that one must be unable to perform. Given Plaintiff's present claim that it was the stress and anxiety of her job that was exacerbating her condition (R.

---

6. *See Vlass,* 244 F.3d at 32 ("It is the responsibility of the Administrator to weigh conflicting evidence.") (*Citing Guarino v. Metropolitan Life. Ins. Co.,* 915 F.Supp. 435, 445 (D.Mass.1995)).

7. Furthermore, despite such alleged anxiety and stress, Plaintiff was at no time referred to a mental health professional, nor did she see one on her own to support her disability claim.

160) and the reports of Dr. Weiss that indicated she was physically capable of the light work her occupation requires, Defendant was not unreasonable in citing the lack of evidence to show that Plaintiff was not able to perform her occupation for another employer in an alternative work setting. (R. 22.)

If in fact Plaintiff's disability claim is based on her mental health and the stress caused by her position with Falcon Shoe, Plaintiff should have sought documentation from a mental health professional. However, no such evidence has been provided. By comparing the reports on Plaintiff's physical capabilities provided by her doctors with the definition of her job provided by her employer and the Dictionary of Occupational Titles, Defendant found that the requirements of Plaintiff's occupation were not such that her fibromyalgia and osteoarthritis would preclude her from performing them. While perhaps it was not advisable for Plaintiff to return to her former job at Falcon Shoe due to the apparent stress of that work environment, it was not arbitrary for Reliance to conclude that she could perform the material duties of a stitching room supervisor elsewhere. This Court cannot say that such a finding is patently unreasonable based on this evidence.[8]

■ Lastly, this Court notes that under ERISA, a claimant whose benefits have been denied is entitled to "a reasonable opportunity ... for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2).[9] Plaintiff was afforded such a full and fair review: she exercised her right to appeal, and Defendant Reliance, after what appears from the record to be a thorough review, in its discretion denied this appeal. Defendant fully considered all of the medical information pertaining to Plaintiff's condition at the time she re-

---

8. Defendant explained in its letter affirming its decision to deny benefits:

> According to the information provided by your employer your occupation is considered light level duties with lifting up to 20 lbs occasionally, up to 10 lbs frequently, or negligible amount [sic] constantly; with physical demands of stooping occasionally; reaching, handling and fingering frequently; feeling occasionally; talking, hearing and near acuity frequently; depth perception and color vision occasionally with work situations such as performing a variety of duties, directing, controlling, planning, dealing with people, making judgments and decisions; coordinating · data; supervising people and manipulating things.

(R. 21.) It should be noted that the record contains a Reliance Standard document filled out by Plaintiff's employer that indicates that Plaintiff's job occasionally entails the pulling of forty pounds. The form, as filled out by her employer, also indicates that her job entails continuous walking and standing and frequent stooping. However, Plaintiff has not made an issue of this discrepancy nor even pointed it out, so the Court will assume that the above description of Plaintiff's job, set forth in Defendant's letter affirming its denial of benefits, is the correct one.

9. One court described as follows the requirements for full and fair review:

> [T]he plan's fiduciary must consider any and all pertinent information reasonably available to him. The decision must be supported by substantial evidence. The fiduciary must notify the participant promptly, in writing and in language likely to be understood by laymen, that the claim has been denied with the specific reasons therefore. The fiduciary must also inform the participant of what evidence he relied upon and provide him with an opportunity to examine that evidence and to submit written comments or rebuttal documentary evidence ...

*Crocco v. Xerox Corp.*, 956 F.Supp. 129, 139 (D.Conn.1997) (*quoting Grossmuller v. International Union*, 715 F.2d 853, 857–58 (3d Cir.1983)). Reliance has fulfilled these requirements.

quested disability benefits up until it denied her appeal. Plaintiff has continued to pursue her claim notwithstanding Defendant's denial of her appeal.[10] Plaintiff can point to no authority, in either the plan itself or in ERISA, to require Reliance to consider new medical documentation after the denial of her appeal.[11] Because this Court determines that Plaintiff was given a full and fair review before Defendant issued its decision denying Plaintiff's appeal, whatever occurred pursuant to any further gratuitous review undertaken by Defendant will not be considered by this Court.

## IV. CONCLUSION

From the record before the Court, it appears that Defendant carefully considered all of the evidence that was put before it, and determined that given that evidence, Plaintiff was capable of performing adequately in her occupation despite some pain or discomfort she might feel. Given the information supplied by Plaintiff's doctors with regard to her physical condition, and the corresponding lack of evidence (aside from the opinions of her cardiologist) with regard to any mental health problems she might be having, it does not appear that the decision of Reliance to uphold the termination of Plaintiff's long-term disability benefits constitutes an arbitrary or capricious decision. For these reasons, Defendant's Motion for Summary Judgment is hereby **GRANT-**

ED, and Plaintiff's Motion for Summary Judgment is hereby **DENIED.**

So **ORDERED.**

---

10. It was not until after Defendant denied Plaintiff's appeal that Plaintiff sent in yet another form filled out by Dr. Weiss, this time conveying considerably different impressions of her physical condition. (R. 58–59.) It was at this time that she also sent in further documentation consisting of a letter written by Dr. Weiss dated less than one month before she made her claim for disability benefits. (R. 56.) Plaintiff had ample opportunity to present this information before her appeal was denied.

11. Even so, although the Court finds it to have been unnecessary, Reliance did consider further information after it denied her appeal; it still found, based on an assessment by one of its vocational rehabilitation reviewers, that Plaintiff was capable of performing light work and, therefore, her own occupation. (R. 24.)