**Juan ALAMO RODRIGUEZ, Plaintiff,**

**v.**

**PFIZER PHARMACEUTICALS, INC., Defendant.**

**No. 02–1353 (DRD).**

United States District Court, D. Puerto Rico.

Sept. 30, 2003.

Arturo Luciano–Delgado, San Juan, PR, for plaintiff.

Carl E. Schuster, Schuster, Usera & Aguilo, LLP, San Juan, PR, for defendant.

## OPINION & ORDER

DOMINGUEZ, District Judge.

Pending before the Court is Defendant's, Pfizer Pharmaceuticals, Inc., (hereinafter referred to as "Pfizer" or "Defendant"), Motion for Summary Judgment (Docket No. 27), which Plaintiff Juan Alamo Rodriguez (hereinafter referred to as "Plaintiff" or "Alamo") duly opposed (Docket No. 35). Defendant replied through Docket No. 43. On May 14, 2003, the Court referred the matter to Magis-

trate Judge Gustavo A. Gelpi for a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B); Fᴇᴅ.R.Cɪᴠ. P. 72(b); and Local Rule 503. (Docket No. 39). The Magistrate filed a Report and Recommendation ("R & R") on June 27, 2003 (Docket No. 47). In the report, the Magistrate recommended that the Motion for Summary Judgment filed by Defendant be granted.[1] Plaintiff filed objections thereto, on July 7, 2003. (Docket No. 48). After considering Plaintiff's objections, and reviewing *de novo* the R & R, the Court determines that Pfizer's Motion for Summary Judgment should be **GRANTED.**

## I. MAGISTRATE REPORT AND RECOMMENDATION

The District Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation. 28 U.S.C. § 636(b)(1)(B) (1993); Fᴇᴅ.R.Cɪᴠ. P. 72(b); Rule 503, Local Rules, District of Puerto Rico. *See Mathews v. Weber*, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). Of course, an adversely affected party may contest the Magistrate's report and recommendation by filing its objections within ten (10) days after being served a copy thereof. *See* Local Rule 510.2(A); Fᴇᴅ.R.Cɪᴠ. P. 72(b). Moreover, 28 U.S.C. § 636(b)(1), in pertinent part, provides that:

> Within ten days of being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a *de novo* determination of

those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. *See* 28 U.S.C. § 636(b)(1).

■ However, pursuant to Fᴇᴅ.R.Cɪᴠ. P. 72(b), "[a]bsent objection by the plaintiffs, the district court had a right to assume that plaintiffs agreed to the magistrate's recommendation." *Templeman v. Chris Craft Corp.*, 770 F.2d 245, 247 (1st Cir. 1985), *cert. denied*, 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 556 (1985). Moreover, "[f]ailure to raise objections to the Report and Recommendation waives that party's right to review in the district court and those claims not preserved by such objection are precluded on appeal." *Davet v. Maccarone*, 973 F.2d 22, 30–31 (1st Cir. 1992). *See also Henley Drilling Co. v. McGee*, 36 F.3d 143, 150–151 (1st Cir.1994) (holding that objections are required when challenging findings actually set out in magistrate's recommendation, as well as magistrate's failure to make additional findings); *Lewry v. Town of Standish*, 984 F.2d 25, 27 (1st Cir.1993) (stating that "[o]bjection to a magistrate's report preserves only those objections that are specified"); *Keating v. Secretary of H.H.S.*, 848 F.2d 271, 275 (1st Cir.1988); *Borden v. Secretary of H.H.S.*, 836 F.2d 4, 6 (1st Cir.1987) (holding that appellant was entitled to a de novo review, "however he was not entitled to a de novo review of an argument never raised"). *See generally United States v. Valencia–Copete*, 792

---

1. Magistrate Judge Gelpi also recommended that Defendant's Motion to Dismiss (Docket No. 30), Plaintiff's Fourteenth Amendment claim be granted. (See Docket No. 41). Magistrate Gelpi's recommendation was not opposed. The Court grants the motion to dismiss on the ground that Fourteenth Amendment constitutional provisions do not

apply to private entities such as Defendant, Pfizer Pharmaceuticals, Inc. There is, therefore, no state action. *Denver Area Educational Telecomm. Consortium Inc. v. F.C.C.*, 518 U.S. 727, 116 S.Ct. 2374, 135 L.Ed.2d 888 (1996); *Perkins v. Londonderry Basketball Club*, 196 F.3d 13 (1st Cir.1999).

F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 605 (1st Cir.1980).

Provided Plaintiff has objected to all the determinations addressed by the Magistrate, the Court shall make a *de novo* determination and review of the arguments raised by both parties.

## II. FACTUAL & PROCEDURAL BACKGROUND

The Court must analyze the factual scenario in this case construing the facts, the record, and all reasonable inferences in the light most favorable to the party opposing summary judgment. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000)("... the Court must draw all reasonable inferences in favor of the nonmoving party ..."); *see also, Leahy v. Raytheon Company*, 315 F.3d 11, 17 (2002) ("... the court must take the record 'in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor'.") (quoting *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990); see also, *Plumley v. Southern Container Inc.*, 303 F.3d 364, 368–69 (1st Cir.2002); *Rosenberg v. City of Everett*, 328 F.3d 12, 17 (1st Cir.2003) (the Court "presents [the facts] in the light most favorable to the plaintiff.")).

Plaintiff Juan Alamo Rodriguez, began working at Defendant Pfizer Pharmaceuticals, Inc., at its Vega Baja Plant, on May 9, 1978. Plaintiff occupied various positions until he was appointed as a Mechanic Operator in the Packaging Rolaids–DS Department, on October 20, 1997. (Docket No. 1, ¶ 3). Plaintiff's duties at the position of Mechanic Operator comprehended the following, to wit: operation of the roll wrapper and multipacker machine, including cleaning, inspecting the product, packaging, folding the displays in which the rolls that go into the multipacker machine are placed, and repairing the multi packer machine. Most of the time, Plaintiff's functions required him to be in a standing position. (Docket No. 35, Ex. 6, pgs. 29, 52–58; Ex. 29).

On September 13, 2000, Plaintiff visited Pfizer's physician, Dr. Roberto Lopez, and complained about having shoulder pain. Plaintiff stated that the pain was caused by the repetitive manual movements required to fold the displays in which the Rolaid rolls are placed for packing, in the multi packer machine he operated. Dr. Lopez referred Plaintiff to physiatrist treatment under the care of Dr. Angel Colon. Following various physical therapy sessions, Dr. Colon thereafter referred Plaintiff to Dr. Raul Rodriguez Santiago. On or about September 30, 2000, Dr. Rodriguez diagnosed Plaintiff with osteoarthritis [2] and prescribed Celebrex as treatment. (Docket No. 35, Ex. 1, p. 28).

Approximately fifteen days after the referral, Dr. Rodriguez issued a medical certificate regarding Plaintiff, which Alamo in turn addressed to Defendant Pfizer. (Docket No. 35, Ex. 10). In his certificate, Dr. Rodriguez stated that the Plaintiff "should avoid stressful repetitive movements", particularly with the hands. (Docket No. 35, Ex. 10). Dr. Rodriguez did not specify in the certificate, any particular restrictions as far as duration and quantity of work the Plaintiff was able to perform.[3]

---

**2.** Osteoarthritis is defined as a type of arthritis caused by inflammation, breakdown, and eventual loss of cartilage in the joints. Also known as degenerative arthritis. Refer to, http://www.medterms.com/medicinenet/focusonarthritis/osteoarthritis.

**3.** Dr. Rodriguez was not aware of the particular job requirements of Plaintiff, and was

Alamo returned to Pfizer on October 23, 2000, and visited the Defendant's physician, Dr. Lopez. Thereafter, Dr. Lopez requested Dr. Rodriguez to specify the restrictions recommended to Plaintiff, according to duration and quantity of work he was capable of performing. Through a letter dated October 30, 2000, Dr. Rodriguez stated that Alamo should "avoid repetitive hand squeeze, grasp, grip and pull more than 10 lbs. during the day." (Docket No. 35, Exh. 12). However, Dr. Lopez determined that Dr. Rodriguez's recommended restrictions lacked the required information to determine changes in the Plaintiff's work duties, and how those changes, if any, were to be implemented by Pfizer. Dr. Lopez instead decided to perform a Functional Capacity Evaluation ("FCE") upon Plaintiff, and to wait for the "FCE" to be completed. (Docket No. 29, Ex. 11).

The "FCE" was performed on November 3, 2000, by physical therapist Javier Espina. (Docket No. 35, Ex. 9). The evaluation concluded that Alamo was able to "work at the LIGHT Physical Demand Level for an 8 hour day according to the Dictionary of Occupational Titles." *Id.* The report stated that Plaintiff had a specific leg capacity and torso lift capacity of 20 lbs., and without more, concluded that Plaintiff did not meet the physical requirements of the position of Mechanic Operator. (Docket No. 35, Ex. 9; Docket No. 29, Ex. 15).

On January 10, 2001, rheumatologist Dr. Carlos A. Pantojas, evaluated the Plaintiff. (Docket No. 29, Exh. 15; Docket No. 35, Ex. 1, p. 83, lines 8–12). Pursuant to Dr. Pantojas' examination, Alamo exhibited "problems for sustained positions or repet-

itive movements", and that Alamo should avoid "lifting or carrying moderate or heavy objects or perform activities which require hyperextension of neck or lifting arms over shoulders ..." (Docket No. 29, Ex. 15, p. 3). On January 17, 2001, Alamo visited Pfizer to discuss the results of the "FCE" and his return to work. (Docket No. 29, Ex. 17). At that point, the results of Dr. Pantojas' evaluation had not been received by Pfizer.[4] Defendant then referred Plaintiff for a second "FCE" to be performed by Dr. Rafael Sein, which Plaintiff underwent on March 5, 2001. (Docket No. 29, Ex. 18). Dr. Sein's evaluation revealed a capacity to work as a Mechanic/Operator, but with specific restrictions. (Docket No. 29, Ex. 18, ps. 1–4).

On March 23, 2003, the Modified Duty Committee at Pfizer evaluated Dr. Sein's examination record and agreed to implement the physical restrictions suggested by the doctor. Those restrictions included, i) no lifting of objects weighing more than 37 pounds; ii) avoid repetitive work using superior extremities, and, iii) avoid remaining in the standing position for more than four (4) hours, during an eight (8) hour work day. (Docket No. 29, Ex. 19). On April 11, 2001, Alamo contacted Pfizer and, held a conversation with Dr. Lopez, as to the recommended restrictions. At that point, Alamo agreed to them and to return to work. (Docket No. 29, Ex. 20).

Plaintiff returned to Pfizer on April 18, 2001, he had undergone a medical evaluation that allowed him work with the referred restrictions and modifications, which were indeed agreed upon by the Modified Duty Committee and Plaintiff

therefore unable to recommend specific limitations.

4. Dr. Pantojas' final evaluation report did not include any specific recommendation regarding the job functions that the plaintiff was able to perform.

himself. Mr. Raul Romero, Plaintiff's direct supervisor, discussed the restrictions with Alamo, and also notified him that the supplier for the displays had been changed. Due to the change, there was no longer a need to manually fold the displays in which the Rolaids rolls, that go into the multipacker machine, are placed. That was precisely the cause for which Plaintiff originally complained of shoulder pain. (Docket No. 35, Ex. 1, p. 102, lines 8–18); (see also, Docket No. 40, Ex. 27). Having the displays changed, i.e., displays no longer required folding, so did the demands of the operator position. Alamo was to be placed operating the same machine, with the new adapted changes. (Docket No. 35, Ex. 1, p. 103).

Alamo nevertheless rejected these terms, but requested Romero to allow him until April 23, 2001, to return to work, to handle some personal matters before returning. Alamo further told Romero that if he was not to report to work on the 23rd, it was because he had gone to see his attorney, and was not accepting the restrictions and accommodations Pfizer had offered him. Alamo had requested, on one occasion, to be transferred to the position of Mechanic at the Bottle Line. (Docket No. 35, Ex. 1, ps. 65–66). Plaintiff however er acknowledged that the mechanic position he desired was filled, not vacant, and that it would require Pfizer to move another person to Plaintiff's previous position. (Docket No. 35, Ex. 1, ps–65–66, lines 14–24, and 1–7). Plaintiff sustained that, due to his osteoarthritis condition, he was unable to perform the tasks and duties related to the position of Mechanic Operator, and that he could only perform those related to the mechanical aspect of the job; as opposed to the operating functions of the position. Alamo desired to be relieved

from the duties as an operator, and to remain solely as the mechanic of the multi packer machine, or to be transferred to the other position of mechanic at the Bottle Line.

Plaintiff never returned to work to his job position at the Rolaids line on April 23, 2001. On April 26, 2001, Pfizer's Human Resources Manager, Mr. Juan Sandoval Vazquez, sent a letter to Plaintiff requesting him to return to work on or before May 2, 2001. Said letter stated that if Alamo failed to report to work on or before the referred date, then the company was to consider his act/conduct as an abandonment and resignation from employment, which would result in termination of his employment position at Pfizer. (Docket No. 29, Ex. 24). On August 2001, Plaintiff was already employed by A & A Engineering, where he worked as a full time electrician. (Docket No. 35, Ex. 1, Plaintiff's deposition, ps. 14–15).[5] Plaintiff's official termination date from Pfizer was January 9, 2002. (Docket No. 29, Ex. 25).

After proper exhaustion of administrative remedies, on March 7, 2002, Plaintiff Alamo, filed the instant complaint against his former employer, Pfizer, alleging violation, and seeking damages under the American with Disabilities Act, the "ADA", 42 U.S.C. § 12101 *et seq.* Plaintiff invoked supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367, for violation of Puerto Rico's Act No. 44 of July 2, 1985, 1 P.R. Laws Ann., § 501 *et seq.*, (better know as Puerto Rico's disability discrimination statute, or Law No. 44), and for unjust dismissal under Puerto Rico's Act. No 80 of May 30, 1976, 29 P.R. Laws Ann., § 185a *et seq.* Plaintiff also claims compensation for intentional infliction of damages suffered pursuant to Article 1802 of the Puerto Rico Civil Code, 31 P.R. Laws

---

5. As of September 26, 2002, (date Plaintiff's deposition was taken), Plaintiff was still working at A & A Engineering, as a full time electrician.

Ann., § 5141. Plaintiff's complaint specifically alleges he is a disabled individual within the meaning of the "ADA", and that he was discriminated and finally terminated, i.e., constructively discharged, from employment because of his disability, i.e., osteoarthritis. (Docket No. 1, ¶ 15, ¶ 19). Plaintiff also contends that Pfizer discriminated against him by failing to provide reasonable accommodation as required under the "ADA". (Docket No. 1, ¶ 18).[6]

Defendant Pfizer moves for summary judgment on five main grounds: (i) that Plaintiff was not a "qualified individual with a disability" under the ADA; (ii) that Plaintiff's claims for disability discrimination under the ADA are without merit; (iii) Plaintiff did not show the existence of a reasonable accommodation; (iv) Pfizer satisfied its obligation under the ADA to attempt a reasonable accommodation on behalf of Plaintiff; (v) Plaintiff rejected the reasonable accommodation offered by Pfizer. (Docket No. 30).[7]

Plaintiff opposed summary judgment, alleging that his "osteoarthritis condition qualifies him as an individual with disability." (Docket No. 35, p. 5). Plaintiff avers that "he was able to perform the major duties of his job if he would be given reasonable accommodation." (Docket No. 35, p. 5). In his opposition, Plaintiff further alleges, for the first time, that his "physical impairment affects and/or limits the major life activities of having sex, sleeping, and exercising, among other things" (Docket No. 35, p. 6), and that Defendant's failure to accommodate him was discriminatory in nature.

The Court now addresses those arguments, as briefed in the preceding paragraphs, and reviewing the Magistrate's R & R, *de novo*.

## III. SUMMARY JUDGMENT STANDARD

The standard for summary judgment has been revisited by the First Circuit Court of Appeals on several occasions. *Serapion v. Martinez*, 119 F.3d 982, 986 (1st Cir.1997) (citing *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir.1995), collecting cases). A court may grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R.CIV. P. 56(c).

To determine whether these criteria have been met, a court must pierce the boilerplate of the pleadings and carefully review the parties' submissions to ascertain whether they reveal a trialworthy issue as to any material fact. *Perez v. Volvo Car Corporation*, 247 F.3d 303, 310 (1st Cir.2001); *Grant's Dairy–Me., LLC v. Comm'r of Me. Dep't of Agric., Food & Rural Res.*, 232 F.3d 8, 14 (1st Cir.2000); *Cortes–Irizarry v. Corporacion Insular*, 111 F.3d 184, 187 (1st Cir.1997). In applying this screen, the court must construe the record and all reasonable inferences from it in favor of the nonmovant (i.e., the party opposing the summary judgment motion). *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000); *Suarez v. Pueblo Int'l, Inc.*, 229 F.3d 49, 53

---

6. In the complaint, Plaintiff made no mention, nor identified any major life activity being affected by his alleged disability or physical condition.

7. Defendant further contends that Plaintiff's claims for intentional infliction of emotional distress and under Law No. 44 are without merit, and that Plaintiff was dismissed for just cause.

(1st Cir.2000). An absence of evidence on a critical issue weighs against the party—be it the movant or the nonmovant—who would bear the burden of proof on that issue at trial. *Perez, supra; see also: Torres Vargas v. Santiago Cummings*, 149 F.3d 29, 35–36 (1st Cir.1998); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir. 1990).

A fact is deemed "material" if the same "potentially affect[s] the suit's determination." *Id.* "An issue concerning such a fact is 'genuine' if a reasonable factfinder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." *Cortes-Irizarry*, 111 F.3d at 187. Defendant, of course, must not only show that there is "no genuine issue of material facts," but also, that he is "entitled to judgment as a matter of law." *Vega–Rodriguez v. Puerto Rico Tel. Co.*, 110 F.3d 174, 178 (1st Cir. 1997). Further, the court is required to examine the record "drawing all reasonable inferences helpful to the party resisting summary judgment," *Cortes–Irizarry*, 111 F.3d at 187. The facts must be examined under the above criteria because on a potential appeal the appellate court examines "the undisputed facts in the light most congenial to the appellants and adopts their version of any contested facts which are material to our consideration of the issues." *Vega–Rodriguez*, 110 F.3d at 178.

The standard for summary judgment is straightforward and well-established. The burden of establishing the nonexistence of a genuine issue as to a material fact is on the moving party. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This burden has two components: (1) an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and (2) an ultimate burden of persuasion, which always remains on the moving party. See *Id.* In other words, "[t]he party moving for summary judgment, bears the initial burden of demonstrating that there are no genuine issues of material fact for trial." *Hinchey v. NYNEX Corp.*, 144 F.3d 134, 140 (1st Cir.1998). This burden "may be discharged by showing that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. After such a showing, the "burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor." *DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir.1997) (citing *Celotex*, 477 U.S. at 322–25, 106 S.Ct. 2548).

Although the ultimate burden of persuasion remains on the moving party and the court should draw all reasonable inferences in favor of the nonmoving party, the nonmoving party will not defeat a properly supported motion for summary judgment by merely underscoring the "existence of some alleged factual dispute between the parties"; the requirement is that there be a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir.1993). In addition, "factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Under Rule 56(e) of the Federal Rules of Civil Procedure, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); see also *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Summary judgment exists to "pierce the boilerplate of the pleadings," *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794

(1st Cir.1992), and "determine whether a trial actually is necessary." *Vega–Rodriguez v. P.R. Tel. Co.*, 110 F.3d at 178.

## IV. ANALYSIS

Defendant Pfizer moves for summary judgment on the ground that Plaintiff's ADA claim has no merit, because Plaintiff does not qualify as a disabled, protected individual under the meaning of the Act. Defendant also sustains that Pfizer did not fail to provide Plaintiff a reasonable accommodation, as provided under the statute.

Plaintiff, on the other hand, contends that, as an employee with an ortheoarthritis physical condition, he is covered by the ADA, and that he could have worked at Pfizer, if provided accommodation. (Docket No. 1, ¶ 14). He then further avers that Defendant "denied him the right to the workplace accommodation needed due to his physical disability", because he was ordered to return to work to operate the same machine he complained of. (Docket No. 1, ¶ 16). As a consequence, Plaintiff alleges that Defendant failed to reasonably accommodate him because of his medical condition, hence engaging in discriminatory conduct. All that, because Pfizer rejected his proposal of being accommodated as a mechanic in the Bottle Line. (Docket No. 35, p. 5).

■ Plaintiff, in the complaint, limited his allegations, and only sustained that he was a disabled individual, that he could work if given accommodation, and that Defendant discriminated against him for failure to provide the reasonable accommodation he requested. Plaintiff, for the first time in his Opposition to Pfizer's Motion for Summary Judgment, identifies, and alleges, without more, that the three life activities of having sex, sleep, and exercise, were burdened. The Court will not allow Plaintiff to attempt to amend his allegations through the Opposition pleading. It is one matter that the Court must analyze the factual scenario in this case construing the facts, the record, and all reasonable inferences in the light most favorable to the party opposing summary judgment. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. at 150, 120 S.Ct. at 2110. Another is to allow the Plaintiff to bring forth new never raised allegations, and previously unmentioned major life activities that have been allegedly affected. The Court is not obliged to search the record, where Plaintiff failed to request to amend the complaint, in order to set forth those new allegations, and theories. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Barge v. Anheuser–Busch, Inc.*, 87 F.3d 256, 260 (8th Cir.1996); *Vega Rodriguez v. Loctite Puerto Rico, Inc.*, 967 F.Supp. 653, 658, n. 7 (1997).[8]

8. Magistrate Judge Gelpi, in the "disability within the meaning of the Act" analysis, evaluated whether Plaintiff's physical impairment substantially limited the major life activities of having sex, sleep, and exercise, and correctly concluded that none of those were affected by Plaintiff's condition of osteoarthritis. Magistrate Judge Gelpi hence determined that Plaintiff was not an individual with a disability, within the meaning of the ADA, and recommended that the claim be dismissed. The Magistrate made a correct analysis as to how Plaintiff's evidence on the record did not support the allegations that those activities were affected. The Court however, disagrees with the Magistrate in examining those activities as the substantially limited "major life activities" under the Act, because Plaintiff never mentioned, nor identified, the above mentioned major life activities in his complaint, and in no other pleadings, except for his opposition to Defendant's motion for summary judgment. In any event, the Court finds that there is no medical support, on the record, to sustain Plaintiff's new allegations.

The Court nevertheless agrees with the Magistrate's determination that Plaintiff is not an individual with a disability, within the meaning of the ADA, and thus adopts the

Having Plaintiff sustained that as an individual with an ortheoarthritis physical condition, he is covered by the ADA, and that he could **work**, if provided accommodation, the Court shall then analyze if, i) he is an individual qualified for protection; ii) whether his major life activity of **working**[9] was affected, and finally; iii) whether Defendant failed in its duty to provide Plaintiff a reasonable accommodation. Plaintiff's arguments, i.e., having a disability and failure to provide reasonable accommodation, follow the language of the Act. The Court thus construes his claim and allegations under the statutory framework, as provided within the Act itself and established in, *Jacques v. Clean–Up Group, Inc.*, 96 F.3d 506, 511 (1st Cir.1996); *see also, Katz v. City Metal Co. Inc.*, 87 F.3d 26, 30 (1st Cir.1996).

### A. Claim under the American with Disabilities Act (ADA)-Introduction-

ADA is the federal civil rights statute, enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1); *Jacques*, 96 F.3d at 510; *Katz*, 87 F.3d at 30; *Grenier*, 70 F.3d 667, 671 (1st Cir. 1995). In the employment context, the ADA prohibits a "covered entity" (defined as 'a person engaged in an industry affecting commerce who has 15 or more employees') from "discriminating against a quali-

fied individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); *Katz v. City Metal*, 87 F.3d at 30; *Grenier v. Cyanamid Plastics, Inc.*, 70 F.3d at 671. Regulations approved under the statute provide that it is unlawful for a covered entity to discriminate on the basis of "disability", against a "qualified individual with a disability", in regards to, for instance, job assignments. *Jacques*, 96 F.3d at 511; 29 C.F.R., Ch. XIV § 1630.4(d). In an effort to eliminate discrimination against individuals with disabilities, the statute prohibits employers from discriminating against "a qualified individual with a disability because of the disability." *Soileau v. Guilford of Maine, Inc.*, 105 F.3d 12, 14 (1997).

Plaintiff may utilize three methods to establish a claim of disability, as set forth in the First Circuit Court cases of, *Jacques v. Clean–Up Group, Inc.*, 96 F.3d at 511, see also, *Bailey v. Georgia–Pacific Corporation*, 306 F.3d at 1167. Of those three, Plaintiff has, under the circumstantial or preponderance of evidence approach, two methods of proving an ADA claim, i.e., the statutory framework method, or the *McDonnell Douglas* burden-shifting framework. The question presented in the instant case is whether Plaintiff was dis-

Magistrate's recommendation of dismissal. The Court however engages in a different analysis. See discussion at section, Claim under the American with Disabilities Act (ADA), *infra*.

**9.** Although Plaintiff did not specifically allege a major life activity in his complaint, being substantially limited by his condition of osteoarthritis, the complaint does state that "with reasonable accommodation, [Plaintiff] could perform the essential functions of his

position." (Docket No. 1, ¶ 20). See also, *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999); *Lebron–Torres v. Whitehall Laboratories*, 251 F.3d 236 (1st Cir.2001); see also, *Gelabert–Ladenheim v. American Airlines, Inc.*, 252 F.3d 54, 58–63 (1st Cir.2001) (major life activity of working was discussed, in case where Plaintiff brought action against former employer alleging failure to provide a reasonable accommodation).

abled within the meaning of the Act, at the time he sought reasonable accommodation from Pfizer. The Court construes Plaintiff's ADA claim, under the statutory framework method, or "first method"as recognized in *Jacques*.[10]

## STATUTORY FRAMEWORK METHOD (First Method)-

To establish a claim of disability discrimination under the ADA, a plaintiff must prove three things, by a preponderance of the evidence:

**First, that he [or she] was disabled within the meaning of the Act. As to the term "being disabled within the meaning of the Act"**, (first prong of the test), the employee has to prove, by a preponderance of the evidence, that: **(A)** he [she] has a physical or mental impairment that substantially limits one or more of his [her] major life activities; **(B)** he[she] has a record of such impairment; or **(C)** he [she] is being regarded [by the employer] as having such an impairment. *See, Bailey v. Georgia–Pacific Corporation*, 306 F.3d 1162, 1166 (1st Cir.2002); 42 U.S.C. § 12102(2); *Carroll v. Xerox*, 294 F.3d 231, 237 (1st Cir.2002). Only one of the ADA's definitions of "disability" is pertinent here: Alamo claims that he suffered from a physical or mental impairment "that disabled him" (Docket No. 1, ¶ 19). The Court hence shall determine whether he was a disabled protected individual pursuant to the statute (subsection (A)), entitled

to reasonable accommodation. The Court must initially consider whether Plaintiff's allegations pass muster, under the provisions of the statute, and whether his physical condition qualified him as a disabled individual.

The Court's consideration of subsection (A) of the definition proceeds, in turn, in three steps. *Bragdon v. Abbott*, 524 U.S. 624, 631, 118 S.Ct. 2196, 2202, 141 L.Ed.2d 540 (1998). A **three-part analysis** is applied when considering (a), whether the plaintiff has a physical or mental impairment that substantially limits one or more of his [her] major life activities. *First,* the Court must: consider whether plaintiff's condition constitutes a mental or physical impairment. *Second,* the Court identifies the life activity upon which Plaintiff relies, and determines whether it constitutes a major life activity under the ADA. *Third,* tying the two statutory phrases together, the Court must ask whether the impairment substantially limited the major life activity. *Bragdon,* 524 U.S. at 631, 118 S.Ct. 2196; *Carroll,* 294 F.3d at 238; *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002); *Lebron–Torres v. Whitehall Labs.,* 251 F.3d 236, 239–240 (1st Cir.2001).

■ Whether a person has a disability under the ADA is an *individualized inquiry, Sutton v. United Air Lines*, 527 U.S. 471, 483, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999)[11], and Plaintiff has the burden of

---

**10.** Second Method: "A plaintiff may also indirectly prove his or her case 'by using the *prima facie* case and burden shifting method that originated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)'." *Katz,* 87 F.3d at 30 n. 2 (citations omitted); *see Taylor v. Principal Financial Group, Inc.,* 93 F.3d 155, 162–63 (5th Cir.1996) (citations omitted).

Third Method: If Plaintiff has direct evidence of discrimination for the adverse employment decision, the burden of proving the

alleged acts of discrimination, may be accomplished by utilizing said direct evidence. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989).

**11.** Considering that the ADA defines "disability" "with respect to an individual," 42 U.S.C. § 12102(2), "makes clear that Congress intended the existence of a disability to be determined in such a case-by-case manner". *Toyota v. Williams*, 534 U.S. at 198, 122 S.Ct. 681; *Sutton,* 527 U.S. at 483, 119 S.Ct. 2139; *Albertson's, Inc. v. Kirkingburg,* 527 U.S. 555,

establishing each of the above referred elements. *Bailey,* 306 F.3d at 1167. The determination of whether an individual has a disability is based on the effect of that impairment on the life of the individual, taking into consideration that some impairments may be disabling for particular individuals but not for others. 29 C.F.R. § 1630, App. at 402; *Katz,* 87 F.3d at 32; quoting *Chandler v. City of Dallas,* 2 F.3d 1385, 1396 (5th Cir.1993) (recognizing that "the effect of a given type of impairment . . . can vary widely from individual to individual").

*First. Does Plaintiff Alamo's osteoarthritis condition constitute a physical impairment?*

■ As to the type of impairment relevant to this case, the Health and Human Services Regulations define "physical impairment", as the type of "any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive; digestive; genito-urinary; hemic and lymphatic; skin; and endocrine." 45 C.F.R. § 84.3(j)(2)(i) (2001). A "physical impairment" is "any physiological disorder, or condition . . . or anatomical loss affecting" a "body system" such as the "musculoskeletal system." 29 C.F.R. § 1630.2(h). The commentary accompanying the HEW regulations, contains a representative list of disorders and conditions constituting physical impairment, including, *inter alia,* "such diseases and conditions as orthopedic, . . . muscular dystrophy, multiple sclerosis." 42 Fed.Reg. 22685 (1977), reprinted in 45 C.F.R. pt. 84, App. A, p. 334 (1997).

Pursuant to the above referred definitions, the Court finds that Plaintiff's illness is of a nature to qualify as a "physical impairment". See *Lebron–Torres v. Whitehall,* 251 F.3d at 238–240 (the court found a back condition to be a physical impairment); see also, *Pelletier v. Reliance Standard Life Insurance Company,* 223 F.Supp.2d 298 (D.Maine 2002) (osteoarthritis as a disability for purposes of ERISA); *Lyons v. Louisiana Pacific Corporation,* 217 F.Supp.2d 171, 177 (D.Maine 2002) (Plaintiff's "left ankle osteoarthritis [is an] impairment . . . 29 C.F.R. § 1630.2(h)(1)"). Plaintiff's osteoarthritis condition can be categorized, under the relevant EEOC regulations and definitions, as a "physiological disorder or condition" affecting the "musculoskeletal" system. In its pleadings, Defendant Pfizer neither contests that Plaintiff suffers a physical impairment. (See Docket No. 40, p. 7). The inquiry that follows is whether the life activity which Plaintiff relies upon constitutes a major life activity within the scope of the statute. *Bragdon,* 524 U.S. at 631, 118 S.Ct. 2196.

*Second. Does "working" constitute a major life activity under the ADA?*

■ For purposes of the instant discussion, and since the complaint does state that "with reasonable accommodation, [Plaintiff] could perform the essential functions of his position", and therefore work, (Docket No. 1, ¶ 20), the Court assumes that the major life activity allegedly affected is precisely that one. See *Sutton v. United Air Lines, Inc., supra; Lebron Torres v. Whitehall Laboratories, supra;* see also, *Gelabert–Ladenheim v. American Airlines, Inc.,* 252 F.3d at 58–63 (major life activity of working was discussed, in case where Plaintiff brought action against former employer alleging failure to provide a reasonable accommodation). Plaintiff

566, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999);

*Bragdon,* 524 U.S. at 641–642, 118 S.Ct. 2196.

did sustain that as an individual with an ortheoarthritis physical condition, he is covered by the ADA, and that he could **work,** if provided accommodation.

"Major life activities are only those that are of central importance to daily life." *Toyota Motor Mfg. v. Williams,* 534 U.S. at 197, 198, 122 S.Ct. at 691. "[A]n individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Id.,* at 198. Major life activities are defined as those "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and **working.**" 29 C.F.R. 1630.2(i) (emphasis ours); see also, *Sutton,* 527 U.S. at 492, 119 S.Ct. 2139[12]; *Gelabert–Ladenheim v. American Airlines, Inc.,* 252 F.3d 54, 58 (1st Cir.2001); *Lebron–Torres,* 251 F.3d at 239–240; *Quint v. A.E. Staley Mfg. Co.,* 172 F.3d 1, 10 (1st Cir.1999); *Lessard v. Osram Sylvania, Inc.,* 175 F.3d 193, 197 (1st Cir.1999); *Carroll,* 294 F.3d at 238–239 (all accepting arguendo that working is a major life activity, and describing working as a major life activity). The Court must note however er that when the major life activity of working is at issue, the plaintiff "assumes a more fact-specific burden of proof." *Quint,* 172 F.3d at 11.

*Third. Did Plaintiff's physical impairment substantially limit his major life activity of working?*

■ Before proceeding to this analysis, the Court must bear in mind that the standard set forth by the Supreme Court is that "[m]erely having an impairment does not make [an individual] disabled for purposes of the ADA." *Toyota v. Williams,* 534 U.S. at 195, 122 S.Ct. 681. In the same manner, the Supreme Court has also stated that not all physical impairments rise to the level of disability under the statute. *Albertson's, Inc. v. Kirkingburg,* 527 U.S. at 565–566, 119 S.Ct. 2162. Further, "[i]t is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment." *Toyota v. Williams,* 534 U.S. at 198, 122 S.Ct. 681. Rather in the opposite, ADA mandates individuals "claiming the Act's protection ... to prove a disability by offering evidence that the extent of the limitation in terms of their own experience ... is substantial." *Id.,* quoting, *Albertson's, Inc. v. Kirkingburg,* 527 U.S. at 567, 119 S.Ct. 2162.

The EEOC regulations sustain the above and state that "[t]he determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual." 29 C.F.R. pt. 1630, App. § 1630.2(j) (2001), as cited in *Toyota v. Williams,* 534 U.S. at 198, 122 S.Ct. 681. As such, the terms of the ADA must be interpreted strictly in order to create "a demanding standard for qualifying as disabled"; said standard is confirmed by the first section of the ADA, and by the legislative findings and purposes that motivated enactment of the Act.[13]

---

**12.** Assuming without deciding that working is a major life activity.

**13.** See 42 U.S.C. § 12101; 42 U.S.C. § 12101(a)(1). For instance, the Supreme Court followed that interpretative standard and justified it by stating that, when Congress enacted the ADA in 1990, it found that "some 43,000,000 Americans have one or more physical or mental disabilities;" the Court then expressed, "[i]f Congress intended everyone with a physical impairment ... to qualify as disabled, the number of disabled Americans would surely have been much higher ... had Congress intended to include all persons with physical limitations among those covered by the Act, it undoubtedly would have

Although Alamo's condition qualifies as a "physical impairment", it does not follow that he is automatically "disabled" within the meaning of 42 U.S.C. § 12102(2). Thus, it is usually insufficient to submit evidence of a medical diagnosis of an impairment, for the Plaintiff must offer proof demonstrating that the limitation cause by the impairment is **substantial** in terms of his own experience. *Toyota v. Williams,* 534 U.S. at 196–199, 122 S.Ct. 681; *Bailey,* 306 F.3d at 1167. (Emphasis ours). Taking all facts in favor of Plaintiff, his evidence satisfied the first two prongs of the "disability within the meaning of the Act", definition in subsection (A). However, where Alamo's claim fails is at the third and final step of the analysis, inasmuch as he has not shown that his osteoarthritis condition substantially limited his ability to work. The Court explains.

In order to prove that such a "substantial" limitations exists, Plaintiff is required to demonstrate that his osteoarthritis impairment, has precluded him from a class of jobs, or a broad range of jobs. *Lebron–Torres,* 251 F.3d at 240. Under the relevant ADA regulations, an individual faces a "substantial limitation" when she or he is: (i) **unable to perform** a major life activity that the average person in the general population can perform; or, (ii) **significantly restricted** as to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1) (2001) (Emphasis ours). The following factors are to be considered in determining whether an individual is substantially limited in a major life activity: (i) "[t]he nature and severity of the impairment; (ii)[t]he duration or expected duration of the impairment; and, (iii)[t]he permanent or long-term impact,

or the expected permanent or long-term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2)(i)-(iii).

The term "substantial" in the phrase "substantially limits" suggests "considerable" or "to a large decree". *Toyota v. Williams,* 534 U.S. at 196, 122 S.Ct. 681. It thus clearly precludes "impairments that interfere in only a minor way" with the alleged activity, and from qualifying as disabilities. *Albertson's, Inc. v. Kirkingburg,* 527 U.S. at 565, 119 S.Ct. 2162. In order for Plaintiff to prove that his impairment substantially interferes with the major life activity of working, Alamo must make a "weighty showing". *Bailey,* 306 F.3d at 1168. When the major life activity under consideration is that of working, the statutory phrase "substantially limits" requires, at minimum, that the individual alleges that he/she is unable to work in a broad class of jobs. *Sutton,* 527 U.S. at 491, 119 S.Ct. 2139. ADA regulations provide a detailed definition of a substantial limitation on the major life activity of "working":

> "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i).

In interpreting the above referred regulation, other courts have stated that proof that an individual cannot perform a single, particular job is not sufficient for the showing, and does not constitute proof of "substantial limitation"; that to be substantially limited in said major life activity, the plaintiff must be precluded from more

---

cited a much higher number than [43 million] disabled persons in the findings." *Toyota v.*

*Williams,* 534 U.S. at 197–198, 122 S.Ct. 681; *Sutton,* 527 U.S. at 487, 119 S.Ct. 2139.

than a particular job. *Lebron–Torres*, 251 F.3d at 240; *Santiago Clemente v. Executive Airlines, Inc.*, 213 F.3d 25, 32 (1st Cir.2000). The plaintiff must offer sufficient evidence to prove that he/she is "essentially and to a large degree" restricted in the ability to perform either a class of jobs or a broad range of jobs, in the manner prescribed under the cited EEOC regulation.[14] *Carroll*, 294 F.3d at 239–240; *Whitney v. Greenberg, Rosenblatt, Kull & Bitsoli, P.C.*, 258 F.3d 30, 33 (1st Cir.2001).

The Supreme Court has also stated that "[t]o be substantially limited in the major life activity of working, ... one must be precluded from more than one type of job, a specialized job, or a particular job of choice." *Sutton*, 527 U.S. at 492, 119 S.Ct. 2139. It follows, for the same proposition, that "[i]f jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs." *Id.* See also, *Duncan v. Wash. Metro. Area Transit Auth.*, 240 F.3d 1110, 1115–1116 (D.C.Cir.2001) ("the ADA requires a plaintiff ... to produce some evidence of the number and types of jobs in the local employment market in order to show he is disqualified from a substantial class or broad range of such jobs."); as quoted in *Bailey*, 306 F.3d at 1168. It must be noted that in defining "substantially limits", the EEOC regulations only mention the "class" concept in the context of the major life activity of working, *Toyota v. Williams*, 534 U.S. at 200, 122 S.Ct. 681, and thus a claimant is required to show an inability to work in a "broad range", rather than in a "specific" job. *Id.*

Plaintiff's claim must fail because he has not shown that he is unable to work; by contrast, all that Alamo's evidence established is that he experienced difficulties in a single job, mechanic/operator. Plaintiff alleges that his impairment qualifies as a disability under the ADA, however, he fails to provide the Court any specific legal basis to arrive at that conclusion. "An ADA claimant assumes a more fact specific burden of proof in attempting to demonstrate that his [her] impairment 'substantially limits' the major life activity of working." *Ortiz Molina v. MAI del Caribe, Inc.*, 83 F.Supp.2d 271, 275 (D.Puerto Rico 2000); *Quint v. A.E.Staley Mfg. Co.*, 172 F.3d at 9.

The Court finds the evidence insufficient to demonstrate that Plaintiff has been substantially limited in working. Plaintiff's claim is contradicted by his allegations and admissions that he can perform other tasks, related to the electrician job, without difficulty. (Plaintiff's Deposition, Docket No. 35, Exh. 1, p. 19). Plaintiff admitted that he has been able to perform the life activity of working, by performing the job of electrician for over a year on a full-time basis. Plaintiff has been able to conduct all the functions said job requires, including and not limited to manual tasks, climbing stairs, and repeatedly lifting his arms, on a daily basis. (Plaintiff's Deposition, *Id* ). Despite performing the above referred tasks, Plaintiff admitted that he has not requested any accommodation from his current employer. (*Id.*, p. 20). Plaintiff merely states that it is reasonable

---

14. The EEOC provides certain factors for the courts to consider when determining whether an individual is substantially limited in the major life activity of working, including "the geographical area to which the individual has reasonable access and 'the number and types of jobs utilizing similar training, knowledge, skills or abilities, within the geographical area, from which the individual is also disqualified.'" 29 C.F.R. § 1630.2(j)(3)(ii)(A), (B). *Sutton*, 527 U.S. at 491–492, 119 S.Ct. 2139.

to infer that suffering from such a painful arthritis condition, is an impairment capable of limiting any major life activity. Alamo discontinued his medical treatment on or around March, 2002, as well as his visits to the physiatrist.

The Court cannot assume that the plaintiff's alleged condition substantially limits his ability to work, without evidence to support such contention. Even if Plaintiff encounters physical discomfort in the performance of certain tasks at his current employment, this fact alone, is not enough to support a finding that plaintiff's illness, or physical impairment, amounts to a disability that substantially limits his capacity to work. Plaintiff has failed to produce any evidence to support that his osteoarthritis condition satisfied the requirements of 29 C.F.R. § 1630.2(j)(3). Alamo has simply rested on the assertion that he has a "physical impairment and that he is therefore disabled within the meaning of the Act." (Complaint, ¶ 14; Plaintiff's Opposition to Pfizer's Motion for Summary Judgment, p. 5). For the Court to simply infer that a person with osteoarthritis is substantially limited in some life activity is against the very mission of the statute.[15]

Plaintiff's legal memorandum in summary judgment is devoid of precedents to support his allegations, and lacks any evidence from which a reasonable jury could determine that he was actually disabled for the purposes of the ADA. Plaintiff's evidence on record lacks grounds as to his inability to perform a class of jobs or broad range of jobs in various classes. The record also fails to show that he could not perform the specific job he held at Pfizer. Plaintiff simply desired to be re-lieved from the operating functions of his position, and to remain only as the mechanic of the multi packer machine. Plaintiff unreasonably rejected Defendant's adapted changes to his position, and decided not to return to work.

The record reflects that Alamo refused to accept the restrictions implemented to his position, as recommended by Dr. Sein, even after being advised that the displays in which the Rolaids roll are placed, no longer required folding. Plaintiff's supervisor irrefutably indicated that the supplier of the displays changed, and that there was no longer a need to manually fold them.[16] Nevertheless, Plaintiff failed to return to work as he disagreed with the accommodation provided by Defendant, and asserted, that he was unable to perform the functions of the mechanic/operator position, even with the adapted restrictions. Plaintiff on the other hand, since leaving Pfizer, has been working full-time as an electrician, and is actually performing all the tasks related to that position. Certainly, Plaintiff is not significantly restricted in his ability to perform a class of jobs or a broad range of jobs in various classes, he is actually doing so. See *Lebron–Torres*, 251 F.3d at 240–241.

To prevail at summary judgment, Alamo had the obligation to offer the Court "more than steamy rethoric and bare conclusions ... and produce specific facts ... sufficient to limn a trialworthy issue." *Ortiz–Molina*, 83 F.Supp.2d at 276–277. Alamo failed to proffer evidence specifying the kind of jobs that his osteoarthritis condition prevented him from performing, and thus failed to comply with the evidentiary burden the EEOC regulations delineate,

---

**15.** See *Vega Rodriguez v. Loctite Puerto Rico, Inc.*, 967 F.Supp. at 658, for the same proposition, regarding a Lupus condition.

**16.** The task of manual folding was precisely the cause for which Plaintiff originally com-plained of shoulder pain. (Docket No. 35, Ex. 1, p. 103), see also, Factual and Procedural Background, *supra*, p. 148.

and the Supreme Court caselaw requires. *Id.* Plaintiff is qualified for other jobs, and by his own admission is currently performing other jobs. Merely limiting to state that he is not qualified to perform the single, particular job he held, does not fulfill the legal requirement of a substantial limitation. Further, Plaintiff has not adduced sufficient proof that he is substantially limited in any major life activity, to create a material dispute in fact. Taking into consideration that if jobs utilizing an individual's skills are available [i.e., electrician], an employee, as Plaintiff here, is not precluded from a substantial class of jobs, and since Plaintiff's production is limited to evidence establishing that he only experienced difficulties in a single job, his ADA claim therefore fails. See, *Bailey,* 306 F.3d at 1168; *Lebron–Torres,* 251 F.3d at 241; *Gelabert–Ladenheim,* 252 F.3d at 60–61.

Because Plaintiff falls short of the requirements under the ADA to be considered a qualified individual with a disability, he is not entitled for protection under the statute. Plaintiff's claim is therefore DISMISSED. The Court's task, at summary judgment, may conclude here, nevertheless, the Court must also state that Defendant complied in providing Plaintiff a reasonable accommodation.

In the context of the major life activity of working, a person may be sufficiently restricted by a physical impairment from doing his/her job requiring the employer to make a reasonable accommodation to keep the plaintiff employed. Yet, if the impairment does not prevent the plaintiff from working in a class of jobs or broad range of jobs in various classes, then, under the regulations, the plaintiff does not meet the ADA definition of disability and the employer has no duty to accommodate. *Gelabert–Ladenheim v. American Airlines, Inc.,* 252 F.3d at 59, n. 5; *Lebron–Torres,* 251 F.3d at 240–242. An individualized inquiry must be made to determine whether the specific modification for a particular person's disability would be reasonable under the circumstances. *Gelabert–Ladenheim,* 252 F.3d at 59.

## B. Reasonable Accommodation[17]

In addition to forbidding disparate treatment in employment against qualified individuals with disabilities, the ADA makes unlawful for an employer to fail to provide reasonable accommodations for the known physical or mental limitations of otherwise qualified individuals with disabilities, unless the accommodations would impose an undue hardship on the operation of the [employer] business. 42 U.S.C. § 12112(b)(5)(A); *Bailey v. Georgia–Pacific Corporation,* 306 F.3d at 1166; quoting, *Garcia–Ayala v. Lederle Parenterals, Inc.,* 212 F.3d 638, 646, n. 9 (1st Cir.2000); *Higgins v. New Balance Athletic Shoe, Inc.,* 194 F.3d 252, 264 (1st Cir.1999).[18]

---

**17.** The reasonable accommodation matter is only discussed in the alternative that the Plaintiff be disabled under the statute, which the Court concluded to the contrary. *Soileau v. Guilford of Maine, Inc.,* 105 F.3d at 15.

**18.** The ADA prohibits discrimination against "a qualified individual with a disability because of the disability of such individual in regard to ... terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). An employer violates the ADA if it "knows of a disability yet fails to make reasonable accommodations." *Higgins v. New Balance Athletic Shoe, Inc.,* 194 F.3d at 264. To survive summary judgment on a "reasonable accommodation claim, [a Plaintiff] must produce enough evidence for a reasonable jury to find that (1) he is disabled within the meaning of the ADA, (2)he was able to perform the essential functions of the job with or without a reasonable accommodation, and (3) [employer Defendant], despite knowing of [Plaintiff's] disability, did not reasonably accommodate it." *Rocafort v. IBM Corp.,* 334 F.3d 115, 119 (1st Cir.2003).

ADA imposes upon the employer not only a prohibition against discrimination, but also, in appropriate circumstances, a positive obligation to make reasonable accommodation. 42 U.S.C. § 12112(a). Absent disability of the employee, no obligations are triggered for the employer. *Soileau v. Guilford of Maine, Inc.,* 105 F.3d at 15. "With respect to known disabilities, however, the emphasis is on encouraging the employer to 'engage in an interactive process with the individual to determine an effective reasonable accommodation.'" *Katz,* 87 F.3d 26, 33; *Grenier v. Cyanamid Plastics, Inc.,* 70 F.3d at 677. The parties do not dispute that Defendant knew of Alamo's physical condition.

While at Pfizer, Alamo suggested and requested, as an accommodation, to be placed in the bottle line as a mechanic, instead of his then current position as Mechanic Operator on the Rolaids Line. (Docket No. 35, Ex. 1, ps–65–66). Alamo contends that with accommodation in the Bottle Line, in the position of mechanic, he could perform the essential functions of the job.

In spite of the employer's duty to reasonably accommodate a qualified individual with a disability, "[t]he **plaintiff,** as the party who must prove that he or she can perform the **essential functions** of the position with or without reasonable accommodation, **bears the burden of showing the existence of a reasonable accommodation.**" *Feliciano v. State of Rhode Island,* 160 F.3d 780, 786 (1st Cir.1998)(Emphasis ours). In order to prove 'reasonable accommodation', a plaintiff needs to show not only that the proposed accommodation would enable [him] to perform the essential functions of the his/her job, but also

that, at least on the face of things, it is feasible for the employer under the circumstances. *Reed v. LePage Bakeries, Inc.,* 244 F.3d 254, 258 (1st Cir.2001). The plaintiff must present sufficient evidence to allow "a reasonable fact finder to conclude that the accommodation to which [he] points is reasonable." *Ladenheim v. American Airlines, Inc.,* 115 F.Supp.2d 225, 231 (D.Puerto Rico 2000).

■ Once an accommodation is properly requested by an employee, the responsibility of fashioning a reasonable accommodation is shared between the employee and the employer. See *White v. York Int'l Corp.,* 45 F.3d 357, 363 (10th Cir.1995) ("an employer cannot be held liable for failing to provide a [reasonable accommodation] if employee fails to request an accommodation."). Further, under the ADA, requests for accommodation must be express and must be linked to a disability. See, *Cruz Carrillo v. AMR Eagle, Inc.,* 148 F.Supp.2d 142, 146 (D.Puerto Rico 2001). See also, *Rocafort v. IBM Corp.,* 334 F.3d 115, 119 (1st Cir.2003)(reasonable accommodation claims on summary judgment scenario).

Under the ADA, the term "reasonable accommodation" may include:

(A) Making existing facilities used by employees readily accessible to and usable by individuals with disabilities;

(B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies ..., and other similar accommodations for individuals with disabilities. 42 U.S.C. § 12111(9).

An employer need not provide accommodations where it does not know an employee has a disability. See *Reed v. LePage Bakeries, Inc.,* 244 F.3d 254, 261 (1st Cir.2001) ("The employer has no duty to divine the need for a special accommodation where the employee merely makes a mundane request for a change at the workplace.").

Reasonable accommodations include job restructuring [and] part time or modified work schedules. 42 U.S.C. § 12111(9).

A reasonable accommodation may also include reassignment to a **vacant position.** *Feliciano v. State of Rhode Island*, 160 F.3d at 786; 42 U.S.C. § 12111(9)(B)(Emphasis ours). Plaintiff bears the burden of proving that such a vacant position exists. *Id.*, at 786–787. As such, when a disabled individual cannot be reasonably accommodated in his current position, the employer has an **affirmative duty** to transfer him to a **vacant** position where he may perform the essential functions of the with or without reasonable accommodation, unless it constitutes an undue burden. 42 U.S.C. § 12112(9)(b)(5)(A)(Emphasis ours). **It is the employee's responsibility to "make at least a facial showing that there [are] vacant, funded positions whose essential functions he was able to perform."** *Jones v. United Parcel Service*, 214 F.3d 402, 407 (3rd Cir.2000) (emphasis ours); *Cravens v. Blue Cross & Blue Shield*, 214 F.3d 1011, 1021 (8th Cir.2000); see also, *Phelps v. Optima Health, Inc.*, 251 F.3d 21, n. 5 (1st Cir.2001).

■ However, although the employer has the affirmative duty to transfer the employee to a vacant position, ADA is not read as to require affirmative action in favor of individuals with disabilities, in the sense of requiring disabled persons be given priority in hiring or reassignment over those who are not disabled. *Aponte Diaz v. Navieras Puerto Rico, Inc.*, 130 F.Supp.2d 246, 254 (D.Puerto Rico 2001); see also, *Daugherty v. City of El Paso*, 56 F.3d 695, 700 (5th Cir.1995). ADA does not require an employer to remove an individual from his position in order to accommodate a disabled employee who desires said position. *Id.* "An employer is not required by the ADA to create a new job for a [disabled] employee." *Phelps v.*

*Optima Health, Inc.*, 251 F.3d 21, 27 (1st Cir.2001).

The burden of identifying an accommodation that would allow a qualified individual to perform the job rests with that individual (plaintiff). *Feliciano v. State of Rhode Island*, 160 F.3d at 786. "Under the ADA, a qualified individual with a disability is not entitled to the accommodation of his [her] choice, but only to a reasonable accommodation." *Stewart v. Happy Herman's Cheshire*, 117 F.3d 1278, 1286 (11th Cir.1997). "Reasonable accommodation does not require an employer to provide literally everything the disabled employee requests." *Schmidt v. Methodist Hospital*, 89 F.3d 342, 344 (7th Cir.1996).

ADA imposes a duty on the employer to provide a reasonable accommodation to **qualified individuals** unless the employer can demonstrate that the accommodation "would impose an undue hardship on the operation of the business of the covered entity." 42 U.S.C. § 12112(b)(5)(A) (Emphasis ours). In determining whether an accommodation would impose an undue hardship under the ADA, the factors to be considered include, to wit, (i) nature and cost of the accommodation; (ii) overall financial resources of the facility; (iii) effect on the expenses and resources, or the impact otherwise of such accommodation upon the operation of the facility, etc. 42 U.S.C. § 12111(10)(B).

■ In the instant case, Alamo requested only one accommodation. However, the accommodation to be moved to the Mechanic Position in another line, was not at all reasonable nor feasible, since said position was not vacant, and to the contrary, was filled. Plaintiff, on the record, acknowledged that the mechanic position he requested, was not vacant. (Docket No. 35, Ex. 1, ps. 65–66).The accommodation requested would have required Pfizer to remove another employee from that po-

sition or to create a second mechanic position or to create a second mechanic position to accommodate Plaintiff. The ADA further does not require an employer to create a new job for the purpose of reassigning an employee to that job. "ADA [neither] require[s] an employer to hire a full-time helper to assist a disabled employee as a reasonable accommodation." *EEOC v. Amego,* 110 F.3d 135, 149 (1st Cir.1997) quoting, *Ricks v. Xerox Corp.,* 877 F.Supp. 1468, 1477 (D.Kan.1995).[19]

An employer is not required to find another job for an employee who is not qualified for the job he or she was performing. *Schmidt,* 89 F.3d at 344. Indeed, the EEOC regulations confer upon the employer the ultimate discretion in determining the accommodation to be provided to a qualified employee, and "may choose the less expensive accommodation or the accommodation that is easier to provide." *Hankins v. The Gap,* 84 F.3d 797, 800–801 (6th Cir.1996). "[A]n employee cannot make his employer provide a specific accommodation if another accommodation is instead provided." *Id.* Moreover, the ADA does not require an employer to eliminate the essential functions [20] of a job to accommodate an employee. *Jacques,* 96 F.3d at 512.

Since Plaintiff failed to carry his burden of proving that there was a reasonable accommodation available to him, it is clear to the Court that there are no genuine issue of material facts, and that the Defendant is entitled to judgment as a matter of law. Plaintiff's claim for failure to provide reasonable accommodation also fails, and shall be DISMISSED.

## V. STATE LAW CLAIMS; Law No. 44, Law No. 80, and Article 1802-

Plaintiff also claims Defendant violated Puerto Rico's disability discrimination statute, Law 44, *supra;* that he was dismissed, i.e., constructively discharged, without just cause, and claims damages under Article 1802 of the Puerto Rico Civil Code, *supra,* as result of Defendant's alleged discriminatory employment actions.

However, the Court will dismiss these State claims without prejudice as they involve the issue of potential continuing violations, as the assertion of supplemental jurisdiction over state law claims is with in the federal court's discretion. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Because this is not a diversity case, the power of the federal court to hear and to determine state law claims depends on the presence of at least one "substantial" federal claim in the lawsuit. *Newman v. Burgin,* 930 F.2d 955, 963 (1st Cir.1991) citing *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). **Federal jurisdiction in this case hinges on the ADEA claim.** Since "pendent" or "supplementary" claims consist of state matters over which Congress did not grant federal courts independent jurisdiction, once the federal question issues are dismissed, the Court may dismiss the entire case. See *Newman v. Burgin,* 930 F.2d at 964. See also, *Cotto v. Citi-*

---

19. The expense of hiring new staff, i.e., to assist the disabled employee, may prove undue hardship, may alter the operations of the employer, and may go beyond the scope of a reasonable accommodation. *EEOC v. Amego.* 110 F.3d at 148. The ADA neither requires "an employer to accommodate a disability by foregoing an essential function of the position or by reallocating essential functions to make other workers' jobs more onerous." *Feliciano v. State of Rhode Island,* 160 F.3d at 785.

20. The EEOC regulations define the term "essential functions" as the "fundamental job duties of the employment position the individual with a disability holds." 29 C.F.R. § 1630.2(n)(1).

*bank, N.A.,* 247 F.Supp.2d 44 (D.Puerto Rico 2003). See *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (emphasizing that exercise of pendent jurisdiction is at the district court's discretion); *Rodriguez v. Doral Mortg. Corp.,* 57 F.3d at 1177 ("[a]s a general principle, the unfavorable disposition of a plaintiff's federal claims at the **early stages of a suit,** well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims"); *Gibbs,* 383 U.S. at 726, 86 S.Ct. 1130 ("if the federal claims are dismissed before trial, ... the state claims should be dismissed as well."); see also, *Moor v. County of Alameda,* 411 U.S. at 716, 93 S.Ct. at 1799. The Court, acting "well within its discretion", may refuse to exercise supplemental jurisdiction and dismiss without prejudice the state claims when no federal claims remain. *Lares Group, II v. Tobin,* 221 F.3d 41, 45 (1st Cir.2000).

Wherefore, after a thorough review of the record, it is clear to the Court that there are no genuine issue of material facts, and as Plaintiff did not show that he is a protected disabled individual within the meaning of the ADA, nor showed that Pfizer failed to reasonably accommodate him, the Defendant is entitled to judgment as a matter of law as to the federal action. Defendant's Motion for Summary Judgment (Docket No. 27), is hereby **GRANTED,** and this case is **DISMISSED WITH PREJUDICE.** The Court hereby also **DISMISSES WITHOUT PREJUDICE** the Plaintiff's claims against Defendant Pfizer arising under Puerto Rico law, i.e., Law No. 44, Law No. 80, and Article 1802 damages. The Court thus **adopts** Magistrate Judge Gustavo Gelpi's Report and Recommendation[21], and dismisses the complaint against Pfizer Pharmaceuticals, Inc. Judgment of dismissal with prejudice, shall be entered accordingly.

**IT IS SO ORDERED.**

### *JUDGMENT*

For the reasons provided in the Opinion & Order issued on this same date, which the Court fully incorporates, the Court hereby enters judgment dismissing the federal discrimination action against Defendant **WITH PREJUDICE.** The Court hereby enters judgment dismissing **WITHOUT PREJUDICE** the Plaintiff's claims against Defendant arising under Puerto Rico law, i.e., Law No. 44, Law No. 80, and Article 1802 damages. **THIS CASE IS CLOSED** for statistical purposes.

**IT IS SO ORDERED.**

---

**21.** The Court agrees with the Magistrate's determination that Plaintiff is not an individual with a disability, within the meaning of the ADA, and thus adopts the Magistrate's recommendation of dismissal. The Court however engaged in a different analysis. See discussion at section, Claim under the American with Disabilities Act (ADA), *supra.*